UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| DARRELL PATRICK and MARIAN PATRICK, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | No. 7:21-CV-74-REW-EBA ) ) OPINION AND ORDER |
| LIBERTY MUTUAL GROUP, INC., | ) ) |
| Defendant. | ) ) ) |

*** *** *** ***

## I.  Background

Plaintiffs Darrell and Marian Patrick owned a home in Salyersville, Kentucky.  *See* Compl. (DE 1-1 at 3–5) ¶ 4.  Plaintiffs maintained a homeowners insurance policy for the property with Defendant Liberty Mutual Group, Inc.[1]  *See id.* ¶ 5; DE 1-2 (Insurance Policy).  On January 27, 2021, a fire destroyed Plaintiffs' home.  *See id.* ¶ 6; *see also* DE 60-1 (Incident Report).  Plaintiffs subsequently filed a claim with Defendant for their losses, and Defendant accepted coverage.  *See id.* ¶¶ 7–8; DE 60-3 (Estimate of Dwelling Coverage); DE 60-5 (Estimate of Personal Property Coverage).

Defendant paid a total of $370,569.44 to Plaintiffs to compensate for the losses, reflecting the applicable value of Plaintiffs' dwelling loss, loss of personal property, and loss of use of their home.  *See* DE 60-2 (Johnston Declaration) ¶ 4.  The dwelling and property payments were based

---

[1] Defendant contends that the proper party-defendant is actually Liberty Mutual Personal Insurance Company, the underwriter of the homeowners policy.  *See* DE 1 (Notice of Removal) at 1 n.1.  No motion for substitution was ever filed in the record.  Therefore, for the sake of completeness, the Court will treat this Opinion and Order as applying to both entities.  The removal papers properly addressed the citizenship of each company.

1

on "actual cash value" (as compared to "replacement cost value")[2]. *See id.* ¶ 6. Skirmishes about the amount of recoverable loss ensued between the parties. *See* DE 60-9 (Email Chain); DE 60-12 (Email Chain).

Eventually, Plaintiffs filed suit against Defendant in Magoffin County Circuit Court for breach of contract, alleging that Defendant "failed and refuse to provide the full benefits due for Plaintiffs' loss" under the policy. *See* Compl. ¶¶ 9, 13–20. Plaintiffs seek compensatory damages, pre-judgment interest, and recovery of costs and fees. *See id.* at 3. Defendant removed the action to this Court on diversity. *See* DE 1 (Notice of Removal).

After a failed attempt at mediation, Defendant invoked the policy's appraisal provision and moved to compel appraisal to resolve the remaining valuation issue as to the ACV of the dwelling and personal property losses. *See* DE 17 (Motion to Compel) at 4–5, 7; DE 19 (Status Report). The appraisal provision states, in relevant part:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

*See* DE 1-2 at 18. Plaintiffs objected to the appraisal, arguing that while the parties disagreed as to the value of the ACV payment, other disputes remained as to RCV, coverage, and endorsements. *See* DE 24 (Response in Opposition) at 3. The Court granted the motion to compel, finding that "[t]he value of [Plaintiffs'] losses will be determined through the appraisal process." DE 28 (Order

---

[2] These are commonly referred to as "ACV" and "RCV," respectively.

Compelling Appraisal) at 7.[3]

Over a year later, the parties jointly notified the Court that an umpire provided their appraisers with a draft award, which both appraisers signed. *See* DE 52 (Notice of Award); DE 60-17 (Appraisal Award). The draft was fully executed on December 16, 2023. *See* DE 60-17. Defendant issued the remaining payment due under the award,[4] and Plaintiffs confirmed receipt. *See* DE 54 (Status Report); DE 60-18 (Email Confirming Payment). However, the parties also advised that they were separately evaluating whether the appraisal payment resolved all pending disputes in the action. *See* DE 54. The parties each entered subsequent status reports: Defendant maintaining that the appraisal payment resolved the case in its entirety, *see* DE 56, and Plaintiffs contending that issues remain as to their entitlement to RCV, costs, interest, and "Ordinance and Law" coverage, *see* DE 57.

The Court set a summary judgment briefing schedule to address the remaining issues. *See* DE 58 (Order Setting Briefing). The parties filed cross-motions for summary judgment. *See* DE 59 (Plaintiffs' Motion); DE 60 (Defense Motion). The cross-motions are fully briefed and ripe for review. *See* DE 61 (Defense Response); DE 62 (Plaintiffs' Response); DE 63 (Defense Reply).

**II.     Standard**

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553

---

[3] The order came from Judge Atkins, and Plaintiffs did not object or appeal that decision to the undersigned, per Rule 72.

[4] The payment equaled the award less the payments Defendant already remitted to Plaintiffs in accordance with its previous coverage determinations. *See* DE 59 (Plaintiffs' Motion for Summary Judgment) at 2.

(1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* (citing Fed. R. Civ. P. 56(e)). "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Wright v. City of Euclid*, 962 F.3d 852, 864 (6th Cir. 2020) (citation and quotation marks omitted). In determining whether a genuine dispute exists, the Court considers all facts and draws all inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009).

The standard for cross-motions for summary judgment "does not differ from the standard applied when a motion is filed by only one party to the litigation." *Ferro Corp. v. Cookson Grp., PLC*, 585 F.3d 946, 949 (6th Cir. 2009). Thus, when assessing cross-motions for summary judgment, courts must still "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

**III. Analysis**

    **A. Breach of Contract Claim**

"Under Kentucky law, an insurance policy is a contract[.]" *Hamm v. Am. Bankers Ins. Co. of Fla.*, 205 F. Supp. 3d 879, 882 (E.D. Ky. 2016).[5] To state a breach of contract claim, a plaintiff must prove "(1) existence of a contract; (2) breach of that contract; and (3) damages flowing from the breach of that contract." *Id.* In interpreting insurance contracts, courts are "bound by the specific language" of the policies, *Foreman v. Auto Club Prop.-Cas. Ins. Co.*, 617 S.W.3d 345, 349

---

[5] The case is in federal court based on diversity of citizenship, 28 U.S.C. § 1332. *See* DE 1. Because Kentucky is the forum state, Kentucky substantive law properly governs this action. *See Erie R.R. v. Tompkins*, 58 S. Ct. 817, 827–28 (1938); *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006) ("As we are sitting in diversity, we apply the substantive law of Kentucky, the forum state.").

(Ky. 2021), and enforce the policies "as written," *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002).

The parties do not dispute that the homeowners policy constitutes a valid, enforceable contract. Plaintiffs argue that Defendant breached the policy by "undervalu[ing] Plaintiffs' covered loss and refus[ing] to pay the full benefits due under the policy." DE 59 at 4. According to Plaintiffs, Defendant's "undervaluation is evidenced by the monetary amount awarded to Plaintiffs by the [a]ppraisal [a]ward," and "[b]y tendering this payment, [Defendant] conceded its failure to fulfill its duty under the contract." *See id.* at 4. Defendant counters that its payment of the award actually demonstrates its "full compliance" with the policy. *See* DE 60 at 9.

The Court agrees with Defendant. The evidence indicates that Defendant fulfilled its contractual obligations. After the parties came to an impasse on the loss amount, Defendant invoked the policy's appraisal provision, which allows either party to "demand an appraisal of the loss" if the parties "fail to agree on the amount of loss." *See* DE 17; DE 1-2 at 18 (Conditions ¶ 6). As the Court already found, Defendant's invocation of the appraisal provision was proper and timely. *See generally* DE 28. Pursuant to the appraisal provision, an agreed upon appraisal "will set the amount of loss," i.e., the benefits due under the policy. DE 1-2 at 18. The Court also similarly ordered that "[t]he value of the [Plaintiffs'] losses will be determined through the appraisal process." *See* DE 28 at 7. The parties agreed to an appraisal award, which Defendant then paid. *See* DE 54. As Defendant points out, paradoxically, Plaintiffs admit in their motion that the appraisal award "is binding on both parties and established the actual covered damages under the policy." *See* DE 59 at 2. Plaintiffs further state that Defendant "paid Plaintiffs $68,003.28 on January 2, 2024, representing the balance due under the [a]ward." *See id.* In essence, Plaintiffs concede the very argument advanced in their motion: the appraisal award represents the full

benefits due under the policy, and Defendant paid the balance of the award. That is, in compliance with the contract, Defendant actually paid the benefits due under the policy *in full*. Plaintiffs do not identify any additional benefits due to them that Defendant has not already paid. Because all parties concur that they agreed to an appraisal award that set the amount of loss and that Defendant paid the balance of the award, no genuine dispute exists as to whether Defendant fully paid the benefits due to Plaintiffs. Instead, the uncontroverted evidence demonstrates that Defendant fully discharged its duties under the policy. Simply put, where an insurance contract features an agreed tool to resolve disputed loss amount, invocation and use of that tool, assuming good faith and compliance with the tool's result, is not a breach of the contract.

This conclusion is consistent with findings from other courts regarding the viability of an insured's breach of contract claim following the insurer's full payment of an appraisal award. *See e.g., Mainali Corp. v. Covington Specialty Ins. Co.*, 872 F.3d 255, 258 (5th Cir. 2017) ("Courts have thus repeatedly rejected breach of contract claims when an insurer timely paid an appraisal award.") (collecting cases); *Blakely v. USAA Cas. Ins. Co.*, 633 F.3d 944, 948 (10th Cir. 2011) ("Indeed, [Plaintiffs] admit that with the payment of the appraisal award, no further amounts are either claimed or owing under the terms of the policy . . . Because [Defendant] complied with all of the express terms of the policy held by [Plaintiffs], including the appraisal demand clause, [Defendant] is entitled to summary judgment on [Plaintiffs'] claim for breach of express contract."). In *Ball v. Liberty Mutual Group, Inc.*, Civil Action No. 5:22-179-DCR, 2023 WL 6961557, at *2 (E.D. Ky. Oct. 20, 2023), another court in this district also confronted a notably similar issue involving the same appraisal provision. *See Ball,* 2023 WL 6961557, at *1–2. Following the completion of the appraisal process, Plaintiffs continued to pursue their breach of

6

contract claim. *See id.* Holding that their breach of contract claim failed as a matter of law, the Court explained:

> The plaintiffs do not dispute that the appraisers submitted a written report of agreement to [Defendant]. Instead, they continue to express dissatisfaction with the ultimate payment amount, *despite their appraiser's agreement to it.* But according to the plain language of the Policy's appraisal provision, the amount agreed upon by the parties' appraisers establishes the amount of the loss. The Court lacks authority to rewrite the parties' contract simply because the plaintiffs are unhappy with the result.

*Id.* at *2 (emphasis in original) (citations omitted). The reasoning in *Ball* is persuasive and fully applicable to the instant motions.

Seemingly, Plaintiffs' argument hinges on a theory that Defendant breached the contract by delaying payment of the total benefits due because of the disagreement over loss amount. But mere disagreement between the parties as to the value of the loss does not equate to breach of the policy. This is especially the case here, where the policy contains an appraisal provision that functions to resolve disputes over loss amounts, and Defendant properly invoked the appraisal provision. Appraisal occurred in accordance with the policy, and Defendant paid the agreed-to amount of loss in full. Plaintiffs mischaracterize the nature of the appraisal mechanism. Appraisal, as contemplated by the policy, is not an avenue for the insured to obtain post hoc relief but rather, is a means to resolve disputes during the course of the loss determination process. Moreover, Plaintiffs do not identify any provision in the policy that demands that Defendant pay the full loss amount prior to the completion of the appraisal process or *any other* policy provision that Defendant violated. *See Blakely*, 633 F.3d at 948 ("Although [Plaintiffs] point to [Defendant's] refusal to pay the amount of loss they claimed prior to their invocation of the appraisal demand clause, nothing in the policy required [Defendant] to do so. Instead, the policy provided for a mechanism—the appraisal process—to determine the amount of loss when [Defendant] and the

insured could not reach an agreement."). Indeed, the payment was timely under the policy.[6] In sum, Plaintiffs have submitted no evidence of breach.

Given the lack of evidence of breach and in light of the undisputed evidence of Defendant's full compliance with the policy, Plaintiffs' breach of contract claim fails as a matter of law. Because Plaintiffs fail to establish that Defendant breached the policy, the Court need not address damages. Accordingly, the Court grants summary judgment for Defendant on the breach of contract claim and dismisses that claim. For the same reason, the Court denies Plaintiffs' motion for summary judgment on the contract claim.

Relatedly, Plaintiffs state that Defendant's "payment under the appraisal award serves as an unmistakable acknowledgement that [Defendant] . . . ultimately breached its duty to fully compensate Plaintiffs for a covered loss," and therefore, Defendant "confessed judgment due Plaintiffs." *See* DE 59 at 5–6. This confession of judgment, Plaintiffs maintain, separately entitles them to summary judgment on their breach of contract claim. *See id.* at 6.

This argument fails for a few different reasons. First, as the Court has already found, Plaintiffs have failed to submit any evidence that Defendant breached the homeowners policy. Second, Plaintiffs cite to no statutes, rules, or caselaw that define a "confession of judgment." Third, the generally accepted definitions for a confession of judgment do not apply here. *Black's Law Dictionary* defines a "confession of judgment" as "1. A person's agreeing to the entry of judgment upon the occurrence or nonoccurrence of an event, such as making a payment. 2. A judgment taken against a debtor by the creditor, based on the debtor's written consent. 3. The paper on which the person so agrees, before it is entered." *Confession of Judgment*, *Black's Law*

---

[6] The policy provides that "[l]oss will be payable 30 days after we receive your proof of loss and . . . [t]here is a filing of an appraisal award with us." *See* DE 1-2 at 40–41 (applicable in this scenario). The appraisal award was fully executed on December 16, 2023, and by Plaintiffs' own description, Defendant paid the balance of the award by January 2, 2024. *See* DE 59 at 2; DE 60-17.

8

*Dictionary* (12th ed. 2024). Judgment has not been entered or taken against the insurer in this case, nor has Defendant formally admitted any adjudicated liability. Thus, Defendant never confessed judgment.

In any event, Plaintiffs have not established with sufficient legal authority the enforceability of a confession of judgment in this court. Simply, Plaintiffs cannot rely on an alleged confession of judgment to overcome the conclusion that their breach of contract claim fails as a matter of law.

### B. Request for Costs and Pre-judgment Interest

Plaintiffs also claim, in a conclusory fashion, that because they are the prevailing parties in this action, they are entitled to recover taxable costs and pre-judgment interest from Defendant.[7] *See* DE 59 at 6–8.

Rule 54(d)(1) provides, "Unless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party." *See* Fed. R. Civ. P. 54(d)(1); *see also* 28 U.S.C. § 1920 (defining the taxable costs recoverable under Rule 54). Similarly, only prevailing parties may recoup pre-judgment interest. *See Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 275 (6th Cir. 2010) ("Pre-judgment interest must be awarded as a matter of law to prevailing parties when the damages are liquidated."). A plaintiff attains "prevailing party" status where 1) it "receives at least some relief on the merits of its claim" or otherwise "succeeded on a significant issue," and 2) a "judicially sanctioned change in the legal relationship of the parties" occurred. *See Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 425 (6th Cir. 2012) (citation and quotation marks omitted); *Tompkins ex rel. A.T. v. Troy Sch. Dist.*, 199 F. App'x 463, 466 (6th Cir. 2006). Such judicially sanctioned

---

[7] Plaintiffs concede in their motion that they are not entitled to attorneys' fees. *See* DE 59 at 7.

9

changes include a judgment on the merits, a declaratory judgment, a preliminary injunction, or a court-ordered settlement agreement or consent decree. *See Tompkins*, 199 F. App'x at 466; *see also Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 708 (6th Cir. 2020); *Franklin Bank & Tr. Co. v. John Hancock Life Ins. Co. (USA)*, CIVIL ACTION NO. 3:21-CV-435-RGJ, 2023 WL 4240752, at *8 (W.D. Ky. June 28, 2023).

Here, Plaintiffs cannot recover costs or pre-judgment interest because they are not prevailing parties. Their breach of contract claim fails on the merits, and they have not succeeded on any significant issue in this matter. To the extent that Plaintiffs argue that the appraisal award constitutes success since it allowed them to recover additional benefits, the results of the appraisal process are, at most, mixed. Ultimately, the balance of the award was $20,000 less than Plaintiffs' initial demand. *See* DE 59 at 2; DE 1-3 (Demand Letter) at 3. Such mixed results do not warrant recovery. *See Sudeith v. E&J Trailer Sales & Serv., Inc.*, CIVIL ACTION NO. 2:20-CV-00063-EBA, 2024 WL 3087742, at *1 (E.D. Ky. Apr. 18, 2024) (Atkins, Mag. J.) ("When a case's results are mixed, the Sixth Circuit and this Court have held that both parties are prevailing parties, and the parties are to bear their own costs.") (collecting cases).

Further, no judicially sanctioned change occurred in the legal relationship between Plaintiffs and Defendant—relative to Plaintiffs, the Court has not entered judgment, nor has it granted injunctive relief. While the Court granted Defendant's motion to compel appraisal, the appraisal award itself was not judicially sanctioned. The appraisal process was an extrajudicial procedure, akin to arbitration, conducted according to the terms of a contract between two private parties. *Cf. Toms v. Taft*, 338 F.3d 519, 529 (6th Cir. 2003) ("Private settlement agreements do not confer prevailing party status."). And the agreed-to appraisal award was not the product of a court

10

order (as compared to a court-ordered settlement or consent order) but of a proceeding overseen by third-party appraisers and an umpire.

As a matter of law, Plaintiffs are not prevailing parties entitled to recovery. The Court therefore denies Plaintiffs' motion for summary judgment on their request for costs and pre-judgment interest and grants summary judgment for Defendant.

### C. Remaining Matters

Although Plaintiffs mentioned in their status report that they are entitled to RCV and Ordinance and Law coverage, they do not address either in their briefings. *See* DE 57. Therefore, the Court deems Plaintiffs' requests for RCV and Ordinance and Law coverage as abandoned; they are not live issues theoretically precluding summary judgment in the pending case. *See Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."); *see also Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 324 (6th Cir. 2023) ("When a litigant fails to address a claim in response to a motion for summary judgment, that claim is deemed abandoned or forfeited.").

Accordingly, the Court grants summary judgment for Defendant in full and denies Plaintiffs' motion for summary judgment in its entirety. Because the breach of contract claim was Plaintiffs' sole claim against Defendant, the Court also dismisses the Complaint with prejudice.[8]

### IV. Conclusion

For the foregoing reasons, the Court **ORDERS** as follows:

1. The Court **DENIES** DE 59;

---

[8] To be clear, though, the Court is not adjudicating unripe policy issues such as RCV and ordinance or law coverages, which would not apply unless and until actual repair or replacement occur. *See* DE 60 at 12 (noting unripe nature of these matters).

11

2. The Court **GRANTS** DE 60;

3. The Court **DISMISSES** Plaintiffs' Complaint **WITH PREJUDICE**;

4. The Court **STRIKES** the matter from its active docket; and

5. The Court will enter a separate judgment contemporaneously with this Opinion and Order.

This the 26th day of September, 2024.

Signed By:
Robert E. Wier
United States District Judge